CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

JUN 0 7 2006

JOHN F. CORCORAN, CLERK
BY: /s/
       DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL NO. 6:04cr70118 |
| v. | MEMORANDUM OPINION |
| JOHN ALVIS JACKSON, JR. <br> LARRY ANDREW CAREY, | JUDGE NORMAN K. MOON |
| *Defendants.* | |

This matter is before the Court on Defendant John Alvis Jackson, Jr.'s motion for judgment of acquittal and for new trial, filed on April 3, 2006 and Defendant Larry Andrew Carey's motion for judgment of acquittal or arrest of judgment,[1] filed on April 3, 2006. For the following reasons, these motions shall be denied.

## Background

Defendants John Alvis Jackson ("Jackson") and Larry Andrew Carey ("Carey") were convicted under 18 U.S.C. §§ 1344, 1343, 1027, 664, 669, 2, and, in Jackson's case, 371 after

---

[1] Although Defendant Carey styles his motion "Post-Trial Motion for Judgment of Acquittal or Arrest of Judgment," he states in the first sentence that he is renewing his motion for acquittal under Rule 29 and makes no further mention of arrest of judgment. Under Rule 34, the court must arrest judgment where the indictment does not charge an offense or the court does not have jurisdiction over the charged offense. Fed. R. Crim. P. 34. As Carey's motion does not argue for arrest of judgment or suggest that either of these requirements applies, the Court will treat his motion only as a motion for judgment of acquittal under Rule 29.

1

a multi-week jury trial. The convictions stem from the fall of The Burruss Company ("Burruss"), which manufactured and sold wood flooring, cabinet components, and lumber products. The defendants, the company's principal officers, were convicted of falsely inflating the company's inventory on certificates supporting Burruss' revolving line of credit with Fleet Bank; as a result, Burruss received loans to which it was not entitled and for which there was no collateral. In addition, the defendants were convicted of converting company assets pledged as collateral to Fleet, making a false statement on Internal Revenue Service Form 5500 by stating that the company's contribution to the employee pension plan had been paid when it had not, and converting the assets of the employee pension and benefit plans. Defendant Jackson was also convicted of conspiracy to engage in these activities.

Jackson now moves for acquittal under Rule 29 and a new trial under Rule 33. Carey also moves for acquittal under Rule 29.

## Standard of Review

Federal Rule of Criminal Procedure 29 provides that the court may order acquittal where the evidence is insufficient to support a guilty verdict. If the evidence presented, taken in the light most favorable to the prosecution together with all reasonable inferences, permits any rational trier of facts to find a defendant guilty beyond a reasonable doubt, then the evidence is legally sufficient. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States. v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982); *United States v. Olbres*, 61 F.3d 967, 970 (1st Cir. 1995). The court must consider both direct and circumstantial evidence and allow the jury to determine the weight of the evidence and the credibility of witnesses, *Tresvant*, 677 F.2d at 1021. The uncorroborated testimony of a single witness is sufficient to sustain a conviction. *United States v. Wilson*, 115

2

F.3d 1185, 1190 (4th Cir. 1997).

Federal Rule 33 provides that the court may order a new trial if the interest of justice so requires. The court's authority is broader under Rule 33 than under Rule 29, and it may weigh evidence and evaluate the credibility of witnesses in determining whether to grant a new trial. *United States v. Indelicato*, 611 F.2d 376, 387 (1st Cit. 1979). Whether to grant a new trial lies within the sound discretion of the district judge. *United States v. Wechsler*, 406 F.2d 1032, 1033 (4th Cir. 1966). The remedy of new trial is to be used sparingly, however, and only where the evidence weighs so heavily against the verdict that it would be unjust to enter judgment, *U.S. v. Arrington*, 757 F.2d 1484, 1485-86 (4th Cir. 1985); *U.S. v. Lewis*, 220 F. Supp. 2d 548, 559 (S.D.W.Va. 2002), or where a trial error of sufficient magnitude to require reversal on appeal occurred. *United States v. Ringwalt*, 213 F. Supp. 2d 499, 508 (E.D. Pa. 2002) (citing 3 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 556 (3d ed. 2004)).

## Discussion

### Rule 29 Motion for Judgment of Acquittal

Counts One and Three through Seven

Count One of the indictment charged Jackson and Carey with bank fraud in violation of 18 U.S.C. §§ 1344 and 2 for inflating the value of the borrowing base certificates used to support The Burruss Company's revolving line of credit with Fleet Bank. The jury found both Jackson and Carey guilty of this count.

Jackson argues that in order to prove bank fraud, the government must prove that he acted knowingly and with an intent to defraud. The government failed to introduce evidence that he had such intent, he argues, because there was no evidence that he knew that the borrowing base

3

certificates were inflated. He did not sign the certificates, and he testified that he did not know they were inflated until Burruss filed for bankruptcy.

Counts Three through Seven charged Jackson and Carey with wire fraud in violation of 18 U.S.C. §§ 1343 and 2, based on their transmittal of the borrowing base certificates to Fleet Bank. Both Jackson and Carey were convicted on these counts. Jackson argues that because the government presented no evidence showing that he knew the certificates were inflated, there is also insufficient evidence to convict him on these counts. He further argues that he was in the hospital undergoing heart surgery when the certificates referenced in Counts Six and Seven were faxed, and hence he cannot be held responsible for these transmittals.

Carey offers no objections to the jury's verdict as to Counts One and Three through Seven

In response, the government argues that sufficient evidence supports Jackson's conviction on Counts One and Three through Seven: Jackson oversaw the daily operations of Burruss, was Carey's superior, and was familiar with the borrowing arrangement at Fleet. The jury also had before it a note Jackson had written directing Carey to inflate the value of certain inventory, as well as the testimony of both Donna Elliot, who said Jackson instructed her and Carey to revalue some inventory items to increase the company's borrowing power, and Ray Equi, who had notified Jackson that the accounts receivable numbers were inflated. Finally, Jackson was aware that Burruss facilities were actually running low on inventory, despite the rising inventory numbers.

Given the evidence presented and drawing all reasonable inferences in the government's favor, sufficient evidence of Jackson's knowledge and intent exists to support a guilty verdict on

4

these counts under Rule 29. Although the evidence of Jackson's intent is circumstantial, that does not detract from its weigh. The fact that Ray Equi notified Jackson of the inflated numbers, Jackson took no action in response, and Equi was subsequently fired, when coupled with Jackson's instructions to Carey and Elliot to revalue certain inventory, supports the inference that Jackson knew the borrowing base certificates were falsely inflated and intended to defraud Fleet Bank.

Jackson also argues that he is entitled to acquittal on Counts Six and Seven because he was in the hospital when the faxes described in those counts were sent and thus he cannot be held responsible for them. The wire fraud statute prohibits not only sending a fraudulent wire communication, but also causing one to be sent. 18 U.S.C. § 1343. The defendant himself need not have sent the communication if he caused the communication to be made, *United States v. Bohr*, 581 F.2d 1294, 1303 (8th Cir. 1978), or if he knew of past wire communications and could foresee that the charged communication would be sent. *United States v. Gill*, 909 F.2d 274, 278 (7th Cir. 1990). The evidence supports that Jackson knew of and approved previous faxes to Fleet, and could foresee that the inflated borrowing base certificates would continue to be faxed during his convalescence. Taken as a whole, then, the evidence is legally sufficient to sustain a verdict on these counts.

Count Two

Count Two charged Jackson and Carey with committing bank fraud in violation of 18 U.S.C. §§ 1344 and 2 by depositing the proceeds from equipment sales, tax refunds, and insurance proceeds into an account in the name of Burruss Holdings, the contents of which were not available to The Burruss Company and did not appear on its books, and using those funds to

5

pay themselves bonuses. The jury found both Jackson and Carey guilty of Count Two.

Jackson argues that, although all of Burruss' assets were pledged to Fleet Bank as collateral, the sale of these assets amounts to no more than a breach of contract. A breach of contract does not rise to the level of fraud, he argues. Neither does the use of The Burruss Company's funds to pay bonuses amount to fraud, because there was no provision in the loan agreement preventing those bonuses, and Jackson was entitled to grant them. Further, he argues that the act of placing the funds in the Burruss Holdings account does not transform the transaction into a scheme to defraud. Grant Wilson was aware that bonuses would be paid out of the Burruss Holdings account, and indeed The Burruss Company owed a large debt to Burruss Holdings; the tax refunds deposited into the Burruss Holdings account were to assist in paying that debt.

Jackson also argues, in a footnote, that even if the transfers of funds to the Burruss Holdings account was improper, the injured entity was The Burruss Company, not Fleet Bank. *See United States v. Brandon*, 298 F.3d 307 (4th Cir. 2002) (holding that to be convicted of bank fraud, a defendant must actually intend to defraud a bank, rather than injuring it incidentally while defrauding another).

Carey raises no argument for acquittal as to Count Two.

As the government notes, ample evidence at trial showed that Jackson sold assets that he knew belonged to The Burruss Company and that were listed as collateral pledged to Fleet. He and Carey deposited the proceeds of these sales in the Burruss Holdings account and used funds from that account to pay themselves bonuses. Fleet Bank was unaware of this account, and the funds it contained did not appear on The Burruss Company books. The government's expert

6

testified that even if The Burruss Company owed Burruss Holdings money, the defendants failed to follow proper accounting procedures in transferring that money, a point which speaks to the defendants' intent. Further, although Jackson might have authority to pay bonuses, Grant Wilson stated that he was unaware that Burruss Company assets pledged to Fleet were the source of these bonuses.

In addition, whether or not Jackson and Carey's actions amounted to a breach of contract is beside the point. Count Two is not based on the defendants' breach of the loan covenants, but rather on their conversion of Fleet's collateral to their own use. This is more than sharp practice or unethical business conduct, as Jackson alleges. Nor is his argument persuasive that the unauthorized payment of bonuses victimized only The Burruss Company. Although a bank must be the intended victim of a bank fraud scheme, it need not be the immediate victim. *Brandon*, 298 F.3d at 312. Although The Burruss Company was also a victim of defendants' fraud, Fleet suffered the ultimate risk of loss. In light of the government's evidence on this point, Jackson is not entitled to acquittal under Rule 29.

Count Ten

Count Ten of the Indictment charged the defendants with knowingly making a false statement on I.R.S. Form 5500 in violation of 18 U.S.C. §§ 1027 and 2, specifically the statement that The Burruss Company had paid $322,169.00 to the company pension plan when in fact Burruss had made no such contribution when the form was signed. The jury convicted both Jackson and Carey on this count.

Jackson argues that the government has failed to prove either that the form contained a false statement or that he knew that the form contained a false statement at the time he signed it.

7

In fact, the government produced substantial evidence that this statement was false; although the form was signed on October 15, 1999, SunTrust, the custodial trustee, did not actually receive the contribution until April of the next year. Similarly, the government produced evidence that Jackson knew the statement was false when he signed the form. Company policy required Jackson to co-sign checks above a certain value, which suggests that he knew he had not signed a check to SunTrust before signing Form 5500. Further, he made no effort to correct the form when he was informed in early 2000 that no contribution had been made. Hence, Jackson is not entitled to acquittal under Rule 29, as the evidence in the light most favorable to the government shows that the statement was false and that Jackson knew of its falsity.

Carey also argues that he is entitled to a judgment of acquittal on Count Ten, because there is no evidence that he had any knowledge as to the information presented on the form, that he participated in completing the form, or that he took any action constituting aiding and abetting. To prove aiding and abetting by Carey, however, the government is not required to prove that he participated at every stage of the endeavor. Rather, the defendant need only participate at some stage while knowing of the activity's result and intending to bring it about. *United States v. Burgos*, 94 F.3d 849, 873 (4th Cir. 1976). Here, after viewing the evidence in the light most favorable to the government and granting the prosecution all reasonable inferences, the Court does not find that Carey is entitled to acquittal. The government presented evidence both that Carey shared in Jackson's intent to deceive and that he participated in that deception: in terms of the former, he told SunTrust, among others, that the pension contribution check was in the mail when the overwhelming evidence suggests that it was not; he created false accounting

8

entries to cover up the nonpayment of the check; and because like Jackson, he was a co-signer on large checks, a rational trier of fact could also infer that he was aware that the pension check was never written. In terms of the latter, the evidence suggests he was the source of the other Burruss Company information included on Form 5500. Hence, viewing the evidence in the light most favorable to the government and granting the government all reasonable inferences under Rule 29, the Court finds that there was sufficient evidence for the jury's verdict on this count, and thus Carey is not entitled to a judgment of acquittal.

Counts Eleven and Twelve

Counts Eleven and Twelve charged the defendants with converting the assets of, respectively, The Burruss Company's non-union pension plan ("the Company plan") and its union pension plan ("the Union plan"), in violation of 18 U.S.C. §§ 664 and 2. The Burruss Company was required to pay $318,246.27 to the Company Plan through its trustee, SunTrust Bank, by March 15, 2000; similarly, Burruss was required to pay $6,418.45 to the Union Plan. Neither plan was paid, and the jury convicted both defendants of converting these funds to their own use and the use of others.

Jackson offers several grounds for acquittal on these counts. He argues first that Burruss' unpaid contributions were not assets of the plan. Section 664 criminalizes the conversion of "moneys, funds, securities, premiums, credits, property, or other assets" of an employee pension plan or any fund connected therewith. 18 U.S.C. § 664. The statute offers no guidance as to the definition of an "asset," and the Fourth Circuit has not addressed this issue. Other circuits appear to be split. *See ITPE Pension Fund v. Hall,* 334 F.3d 1011, 1013-14 (11th Cir. 2003) (holding that in a suit under ERISA to determine when corporate employees may be imputed fiduciary

9

duties, unpaid employer contributions to a benefit plan are not plan assets unless the agreement between the employer and the fund specifically declares otherwise); *Cline v. Industrial Maintenance Engineering & Contracting Co.*, 200 F.3d 1223, 1234 (9th Cir. 2000) (holding that employer contributions do not become plan assets until actually paid to the plan); *Professional Helicopter Pilots Ass'n v. Denison*, 804 F. Supp. 1447, 1453-54 (M.D. Ala. 1992) (holding that employer contributions do not become plan assets to which a fiduciary obligation attaches until they are paid). *But see United States v. LaBarbara*, 129 F.3d 81 (2d Cir. 1997) (holding that under 18 U.S.C. § 664, an employer's contractual obligation to pay a contribution to a fund is an "asset" of that fund); *In re Luna*, 406 F.3d 1192 (10th Cir. 2005) (disagreeing with *ITPE Pension Fund*, following *LaBarbara*, and holding that the contractual right to unpaid plan contributions is an "asset" under ERISA); *United States v. Panepinto*, 818 F. Supp. 48, 50 (E.D.N.Y. 1993) (holding that unpaid employer contributions are plan assets where, under the underlying wage agreement, the employer has "no legal or equitable right to the monies which should have been contributed to the plan.")

At trial, the Court followed the reasoning of *LaBarbara* and *Luna* and instructed the jury that employer contributions became a plan asset when they were due and payable to the plan. Although courts have reached differing conclusions on this point, these cases offer the better rule. *ITPE Pension Fund, Cline*, and *Professional Helicopter Pilots Association* all address whether employer contributions constitute a plan asset under ERISA. Notably, none of these cases interprets Section 664, which does not refer exclusively to plan "assets," but addresses the conversion of "any of the moneys, funds, securities, premiums, credits, property or other assets" of a plan or "any fund connected therewith." 18 U.S.C. § 664.

10

Case 6:04-cr-70118-NKM   Document 134   Filed 06/07/06   Page 10 of 18   Pageid#: 527

In interpreting a statute, a court should begin by examining the language used in the statute. *Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 653 (4th Cir. 1996). Absent ambiguity or a clearly expressed legislative intent to the contrary, a court should give a statute's language its plain and ordinary meaning. *Williams v. Taylor*, 529 U.S. 420, 431 (2000). The use of the word "credit" indicates that Section 664 reaches beyond those funds actually in a plan account and encompasses the funds an account might also treat as its own. The Oxford English Dictionary defines "credit" as, *inter alia*, "any note, bill, or other document on security of which a person may obtain funds." http://dictionary.oed.com (last visited June 5, 2006). A credit is also defined as "an amount or sum placed at a person's disposal by a bank . . . [or] an entry on the right-hand side of an account constituting an addition to a revenue, net worth or liability account," *Merriam-Webster's Collegiate Dictionary* 272 (10th ed.1993), and "the correlative of a *debt*; that is, a debt considered from the creditor's standpoint, or that which is incoming or due *to* one." *Black's Law Dictionary* 331 (5th ed. 1979). Given this understanding of "credit," *Cline*, and *Professional Helicopter Pilots Association* are inapposite, as they treat as plan assets only those funds already paid into an account.

*ITPE Pension Fund* is also distinguishable, as it addresses the circumstances when corporate employees have fiduciary obligations. 334 F.3d at 1013-14. As will be discussed below, Section 664 applies more broadly, and prohibits conversion by "any person," not merely by a fiduciary. In contrast, *Panepinto* and *LaBarbara* both speak to the nature of a plan asset under Section 664, and are thus more relevant to the question at issue here.[2]

---

[2] Jackson also cites a case interpreting Section 664, *Young v. West Coast Industrial Relations Association*, 763 F. Supp. 64, 75 (D. Del. 1991). There the court looked to the underlying collective bargaining agreement between the parties to determine whether the unpaid

11

Jackson also argues that, even if the unpaid contributions were assets of the plan, he was not a fiduciary of the plan. The plain language of the statute, however, refers to "any person" who abstracts plan assets. 18 U.S.C. § 664. In interpreting the statute, courts have held that a defendant need not hold any particular status as to the plan or be a fiduciary in order to be found guilty. *See, e.g., United States v. Grizzle*, 933 F.2d 943 (11th Cir. 1991). One may embezzle or convert without being a fiduciary, and the statute makes no reference to fiduciary status. Hence, Jackson's argument on this point must also fail.

Finally, Jackson argues that there is no evidence that he intended to defraud. Section 664 requires the government to prove that a defendant acted with the intent to deprive a retirement plan of its funds or with reckless disregard for the interests of a retirement plan. *U.S. v. Krimsky*, 230 F.3d 855, 861 (6th Cir. 2000). At trial, the government introduced notes in Jackson's handwriting from his planner and notepads indicating that he knew the pension contributions were due. The government also showed that he ignored reminders from SunTrust representatives and others to pay the pension contribution. Taken in the light most favorable to the government, this evidence tends to establish that Jackson acted with reckless disregard for the interests of the pension plans. Thus, he is not entitled to acquittal under Rule 29.

Defendant Carey also argues that he is entitled to acquittal on Counts Eleven and Twelve. His rational is similar to Jackson's: he argues that he must be a plan administrator in order to be

---

contributions were plan assets, but it construed the agreement's language more strictly than the district court did in *Panepinto*. Specifically, the *Young* court required that the agreement specify that title to due and owing monies was "vested" in the plan trustees. *Id.* Given the broad language of Section 664, the Court does not believe that the word "vested" must be used in order for an unpaid employer contribution to be a plan asset.

12

found guilty of these counts. This argument fails for the same reason that Jackson's argument does: Section 664 does not require that a defendant hold any particular status, but by its own terms refers to "any person" who embezzles plan funds. *See* 18 U.S.C. § 664; *Grizzle*, 933 F.2d at 947.

Carey also argues that Counts Eleven and Twelve should be dismissed as to him because there is no evidence that he converted the plan funds to his own use. The terms of the statute impose no such requirement, however. Rather, Section 664 refers to one who "converts to his own use or the use of another." In *United States v. Santiago*, 528 F.2d 1130, 1133 (2d Cir. 1976), the court held that diverting funds earmarked for a union pension fund to the union's general coffers fell within the meaning of "another" in the statute and constituted a violation of Section 664. By the same token, the government presented sufficient evidence in this case that Carey helped convert funds required to be paid to the Burruss pension plans to the use of the Burruss Company in order to prolong its appearance of solvency. Hence, Carey is not entitled to acquittal on these counts.

<u>Count Thirteen</u>

Count Thirteen charged the defendants with violating 18 U.S.C. § 669 by converting the assets of a health care benefit program, namely The Burruss Company's health plan, by withholding contributions from employees' paychecks without paying these into the plan account. Both Jackson and Carey were convicted on this count. Jackson argues that he is entitled to acquittal on this count because the government has failed to prove that the employee withholdings were assets of the plan. He argues that Burruss was required to reimburse the plan provider, PCHP, for health care costs regardless of the amounts withheld from employees' pay,

13

and thus that the amounts withheld were not assets of the plan.

ERISA regulations speak directly to this point, and state that the definition of an employee benefit plan asset includes "amounts that a participant has withheld from his wages by an employer, for contribution to the plan as of the earliest date on which such contributions can reasonably be segregated." 29 C.F.R. 2510.3-102(a). *See also LoPresti v. Terwilliger*, 126 F.3d 34, 39 (2d Cir. 1997) (holding that employee contributions are assets of a welfare plan). Cases interpreting this provision do not appear to support Jackson's argument that employee contributions are not assets when an employer's responsibility to pay into the plan is not limited by the amounts contributed by employees. *See Phelps v. C.T. Enterprises, Inc.*, 394 F.3d 213, 220, 221 (4th Cir. 2005). *See also Pension Benefit Guar. Corp v. Solmsen*, 671 F. Supp. 938, 945 (E.D.N.Y. 1987) (holding a defendant liable under ERISA, before the enactment of the regulation at issue, for failing to forward employee contributions to a benefit plan and instead using them for corporate purposes). Hence, merely by showing that funds were withheld from employee paychecks for contribution to PCHP, the government presented sufficient evidence that these funds were plan assets. Jackson is therefore not entitled to acquittal on this point.

Defendant Carey also argues that he is entitled to acquittal on Count Thirteen, based on the same arguments he propounded for Counts Eleven and Twelve. For the reasons described above, his motion for acquittal on Count Thirteen must also be denied.

Count Fourteen

Count Fourteen charged the defendants with conspiracy under 18 U.S.C. § 371 to commit all of the substantive acts listed in the indictment. The jury convicted Jackson on this count but

14

acquitted Carey. Jackson argues that he is entitled to acquittal as well because the government has failed to present evidence that he and Carey agreed to commit these acts, and because there can be no conspiracy where the jury acquitted the only other co-conspirator.

As Jackson notes, however, the acquittal of the sole co-conspirator does not require reversal of the defendant's conspiracy conviction. *United States v. Thomas*, 900 F.2d 37, 40 (4th Cir. 1990). Further, the government has presented sufficient evidence for a rational trier of fact to find that Jackson and Carey conspired. A conspiracy may be proved by direct or circumstantial evidence. *United States v. Burgos*, 94 F.3d 849, 857-58 (4th Cir. 1996), and the government offered circumstantial evidence that Jackson and Carey agreed to carry out the offenses charged. Witnesses testified that the defendants had frequent closed-door meetings and that Carey consulted Jackson on all major and most minor issues. As noted above, the government also presented a notation in Jackson's handwriting suggesting that the value of certain inventory be inflated. Further, Jackson was aware of the nonpayment of Burruss' benefit plan obligations and the inflation of the accounts receivable numbers, but he took no action to remedy these situations.

In addition, the government presented evidence sufficient for the jury to have found that Jackson conspired with other Burruss employees not charged in the indictment. There is no requirement that the indictment charge or even name all co-conspirators; the existence of the conspiracy, rather than the identity of the coconspirators, is an element of the crime. *United States v. American Waste Fibers Co.*, 809 F.2d 1044, 1046 (4th Cir. 1987). The government presented evidence sufficient for the jury to find that Jackson conspired with Donna Elliot regarding the inflation of the borrowing base certificates. As numerous courts have noted, criminal conspiracies are by their nature secret and thus can rarely be proven by direct evidence.

Given this and ample other circumstantial evidence, however, and allowing all reasonable inferences in the government's favor, a rational trier of fact could find that Jackson conspired to carry out the overt acts charged. Hence, Jackson is not entitled to acquittal on this count.

Carey argues that because he was acquitted of conspiracy under Count Fourteen, he is also entitled to acquittal on all of the predicate offenses charged in Counts One through Thirteen. He cites no authority for this novel position, nor is the Court aware of any. The mere fact that the jury did not find that the government carried its burden of proof as to all of the elements of conspiracy does not mean that the jury necessarily found that the government had failed to prove Carey engaged in the predicate acts charged– especially when the jury in fact found him guilty of those acts. His motion for acquittal must therefore be denied.

**Rule 33 Motion for New Trial**

Defendant Jackson also moves for a new trial under Rule 33, arguing (1) that the Court's instructions regarding the definition of "plan assets" with regard to Counts Eleven, Twelve, and Thirteen was contrary to law; (2) that the Court committed reversible error by preventing the defendants from presenting evidence on the actions and compensation of the individuals who controlled Burruss after October 18, 2000; and (3) that his motion for mistrial based on a witness' potentially prejudicial testimony should have been granted.

Jackson's first argument for a new trial is essentially a recasting of his argument for acquittal on Counts Eleven, Twelve, and Thirteen: the Court erroneously defined "plan assets" in the jury instructions. The Court addressed and rejected this argument with regard to Jackson's Rule 29 motion, and that reasoning applies equally to his Rule 33 motion.

16

As to Jackson's second argument for a new trial, the Court ruled during trial that evidence regarding the actions of other individuals after the defendants were removed from their positions was irrelevant and inadmissible. The defendants' theory in seeking to admit this evidence, presumably, was that Burruss' nonpayment of its obligations and ultimate downfall was caused at least in part by the actions and compensation packages of those who took over management after Jackson and Carey were removed. This argument misconstrues the nature of the charges, however. None of the charges against the defendants alleges any action by them after October 20, 2000; according to the indictment, their offenses were complete by that time. Whether or not someone else acted or failed to act after October 20, 2000 does not affect the defendants' actions before that time, which were the subject of the indictment. Hence, the interests of justice do not require that the Court grant Jackson a new trial based on the nonadmission of this evidence.

Finally, Jackson argues for a new trial based on potentially prejudicial testimony. At trial, a witness said that one Burruss employee did not have sufficient burial funds because his pension was being held up by the Burruss bankruptcy. This is not sufficient grounds for a new trial. The witness was stopped before she could finish her statement, and the Court gave an immediate cautionary instruction. The risk of prejudice from this statement was slight, given its partial nature and the substantial evidence the government presented regarding Burruss' nonpayment of its pension obligations. *See United States v. Powers*, 59 F.3d 1460, 1468 (4th Cir. 1995). Hence, the fact that the jury was exposed to this partial statement is not the kind of error that would require reversal on appeal, and hence Jackson's motion for new trial on this point must also be denied.

**Conclusion**

17

Viewed in the light most favorable to the government in conjunction with all reasonable inferences in the government's favor, the evidence supports the defendants' convictions. Hence, neither Jackson nor Carey is entitled to a judgment of acquittal under Rule 29. In addition, the interests of justice do not require that Jackson be granted a new trial under Rule 33. Accordingly, the defendants motions for acquittal and new trial are hereby denied.

An appropriate order shall issue this day.

ENTERED: *[signature]*
U.S. District Judge

*June 7, 2006*
Date